UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
___:24-CV-____

| | |
|---|---|
| ANTHONY WILLIAMS JR, as Administrator of the Estate of ANTHONY WILLIAMS (Deceased), Plaintiff, <br><br> v. <br> CITY OF CHARLOTTE, COUNTY OF MECKLENBURG, JOHNNY JENNINGS, in his capacity as the chief of police for the Charlotte-Mecklenburg Police Department, and JOHN DOE, in his official capacity as a law enforcement officer with the Charlotte-Mecklenburg Police Department, Xavier Mitchell Defendants. | **COMPLAINT** <br> **(JURY TRIAL DEMANDED)** |

**COMES NOW,** Plaintiff Anthony Williams Jr, as Administratrix of the Estate of Anthony Williams (Deceased), by and through the undersigned counsel, and for their complaint against the Defendants, and alleges as follows:

### PREFACE

This is an action to recover money damages resulting from the death of Mr. Anthony Williams in Charlotte, Mecklenburg County, North Carolina. The Plaintiff, Anthony Williams Jr, brings, as a result of multiple violations of Anthony Williams' rights as guaranteed by state and federal law. Williams alleges that the Charlotte-Mecklenburg Police Department failed to take reasonable steps to ensure that a pursuit did not create a high risk of harm to innocent bystanders. Mr. Williams was struck by a suspect that fled from the police at a high rate of speed. As a result, Mr. Williams suffered multiple life-threatening injuries which he later succumbed to.

### PARTIES, JURISDICTION, AND VENUE

1. This cause of action arises in Charlotte, Mecklenburg County, North Carolina.

2. At all times relevant to this action, Anthony Williams (Deceased) was a citizen a resident of Charlotte, Mecklenburg County, North Carolina.

3. The Defendant, City of Charlotte ("City"), was and is a municipal corporation located in Mecklenburg County, North Carolina, duly chartered and existing pursuant to the provisions of N.C. Gen. Stat. § 160A-11, and vested with

   corporate powers and rights as specified in N.C. Gen. Stat. § 160A-11, including, but not limited to, the capacity to sue and be sued. At all times relevant to this action, Defendant City acted through its managers and policy makers, including the Chief of Police and other employees of the Charlotte-Mecklenburg Police Department ("CMPD"); and the acts, edicts, and practices of said persons represent the official policies of Defendant City.

4. The Defendant, County of Mecklenburg ("County"), was and is a political subdivision and county of the State of North Carolina, duly chartered and existing pursuant to the provisions of N.C. Gen. Stat. § 153A-10, and vested with corporate powers and rights as specified in N.C. Gen. Stat. § 153A-11 including, but not limited to, the capacity to sue and be sued. At all times relevant to this action, Defendant County acted through its managers and policy makers, including the Chief of Police and other employees of the Charlotte-Mecklenburg Police Department; and the acts, edicts, and practices of said persons represent the official policies of Defendant County.

5. Upon information and belief, to the extent that any and/or all of the Defendants in this action claim they are a municipal and/or governmental and/or City and/or County owned, operated and/or funded entity or an employee and/or agent of any such entity such Defendants do not have governmental immunity and/or sovereign immunity for any of the acts or omissions described herein. In the alternative, should any and/or all of the Defendants in this action have governmental immunity and/or sovereign immunity, upon information and belief, any and/or all such Defendants have waived any and all such governmental and/or sovereign immunity to which they may have been otherwise entitled, for themselves, their agents, employees and all officials acting in their official (and, if applicable, individual) capacities for civil liability and tort by the act of purchasing (or otherwise procuring, obtaining and/or having in place) liability insurance (or the functional and substantive equivalent thereof, i.e., participation in a local governmental risk pool, etc.) prior to, concurrent with, and/or subsequent to and/or applicable to the acts and omissions alleged herein.

6. Upon information and belief, both Defendant City and Defendant County were and are participants in local governmental risk pools or the functional and substantive equivalent thereof, at all times applicable to the events that are the subject of this action.

7. Upon information and belief, at all times relevant to this action the Defendant, Xavier Mitchell ("Mitchell"), was an adult citizen and resident of Charlotte, Mecklenburg County, North Carolina. He is sued for compensatory and punitive damages under both state and federal law.

8. Subject matter jurisdiction is, therefore, appropriate and proper and any and all such governmental immunity and sovereign immunity is and has been fully waived pursuant to N.C. Gen. Stat. §160A-485 and/or N.C. Gen. Stat. §153A-435.

9. The court has subject matter jurisdiction pursuant to 42 U.S.C. §1983 as there are questions of Federal Law.

10. This Court has supplemental jurisdiction over Plaintiff's state law claims arising under the statutory and common law pursuant to 28 U.S.C. §1367 because Plaintiff's state law claims are interrelated with Plaintiff's federal claims and arise from a common nucleus of operative facts such that the adjudication of Plaintiff's state law claims with Plaintiff's federal claims further the interest of judicial economy.

11. Jurisdiction of the Court is invoked pursuant to 28 U.S.C. § 1331 and §1343(a)(4) because it arises under the laws of the United States and seeks redress for violations of civil rights.

## ACTUAL AND/OR APPARENT AGENCY

12. Prior to 1993, the City of Charlotte and Mecklenburg County maintained independent police departments.

13. The Charlotte-Mecklenburg Police Department was formed in 1993 with the merger of the former Charlotte City Police Department and the Mecklenburg County Rural Police Department.

14. In the exercise of statutory powers granted by the North Carolina Legislature, Defendant City, along with Defendant Mecklenburg County, established and created and continue to operate the Charlotte-Mecklenburg Police Department.

15. At all times relevant to the allegations alleged in this Complaint, the Charlotte-Mecklenburg Police Department exercised jurisdiction throughout Mecklenburg County, including those portions of Mecklenburg County located outside the city limits of Charlotte, Pineville, Matthews, Mint Hill, and Huntersville.

16. The City of Charlotte maintained no municipal police department during the times relevant to the allegations alleged in this Complaint.

17. Mecklenburg County maintained no independent police department during the times relevant to the allegations alleged in this Complaint.

18. Upon information and belief, the operating budget of CMPD is funded jointly by Defendants City and County. Both Defendants City and County have the actual right and legal authority to direct and control CMPD, its policies and procedures, officers and employees. In the alternative, Both Defendants City and County have the apparent right and authority to direct and control CMPD, its policies and procedures, officers and employees.

19. That the enforcement of laws of the state of North Carolina is an essential and well recognized duty of all counties in the state of North Carolina. Defendant County had a nondelegable duty to engage in law enforcement activities within its borders.

20. At all times relevant to the allegations alleged in this Complaint, Defendant Jennings was employed by the Defendant City and/or Defendant County and/or the Charlotte-Mecklenburg Police Department as a law enforcement officer and Chief of Police, and was acting at all relevant times as an agent of Defendant City and/or Defendant County within the course and scope of his duties as a sworn officer of the Charlotte-Mecklenburg Police Department and under the color of laws, statutes, regulations, customs, practices and usage of the City of Charlotte, County of Mecklenburg and the State of North Carolina. He is sued in his official capacity for compensatory damages under both State and Federal law.

21. At all times relevant to the allegations alleged in this Complaint, Defendant Doe was employed by the Defendant City and/or Defendant County and/or the Charlotte-Mecklenburg Police Department as a law enforcement officer, and was acting at all relevant times as an agent of Defendant City and/or Defendant County within the course and scope of his duties as a sworn officer of the Charlotte-Mecklenburg Police Department and under the color of laws, statutes, regulations, customs, practices and usage of the City of Charlotte, County of Mecklenburg and the State of North Carolina. He is sued in his individual and official capacities for compensatory and punitive damages.

22. Defendant City, Defendant County and Defendant Doe and CMPD had the right and/or power to direct and control the manner in which its/their employees and/or agents executed their official duties.

23. The deliberate indifference and liability of all Defendants includes their agents, principals, employees and/or servants, both directly and vicariously, pursuant to principals of non-delegable duty, corporate liability, actual authority, apparent

authority, actual agency, ostensible agency and/or respondent superior and the acts and/or omissions of the abovenamed Defendants were a direct and proximate cause of the injuries, damages and losses sustained by the Plaintiff.

## JOINT AND SEVERAL LIABILITY

24. The above-named Defendants are jointly and severally liable for all damages alleged herein since their deliberate indifference, singularly or in combination, are a direct and proximate cause of Plaintiff's damages, injuries, and losses.

## GENERAL FACTUAL ALLEGATIONS APPLICABLE TO ALL CLAIMS

25. Anthony Williams was an adult citizen of the United States of America residing in Charlotte, Mecklenburg County, North Carolina, entitled to exercise all of the rights and privileges provided by the Constitutions of the State of North Carolina and the United States of America, including the Fourteenth Amendment thereto.

26. On or about January 6, 2021, Officers were conducting an investigation to apprehend Xavier Mitchell who was wanted for various crimes.

27. The crimes included but were not limited to being in possession of a stolen vehicle and fleeing to elude law enforcement on numerous occasions.

28. CMPD was well that Defendant Mitchell was a flight risk.

29. Accordingly, the Charlotte Mecklenburg Police Department (CMPD) had several marked units and a helicopter engaged in the attempt to make the arrest.

30. CMPD supervisors decided to conduct the operation on January 6 around 5pm during rush hour traffic.

31. On January 6, 2021, the sun set at 5:26pm resulting in this being a night time operation.

32. Mr. Williams, 60, was on his way to visit his sister in Hidden Valley on January 6, 2021, at the time of the operation to arrest Xavier Mitchell.

33. As anticipated by CMPD, Defendant Mitchell did in fact flee. Mr. Williams was turning onto Tom Hunter Road when Defendant Mitchell slammed into Mr. Williams head-on.

34. Williams suffered multiple life-threatening injuries including a broken neck, back, nose, and leg.

35. Half of his ribs were also broken, and he had emergency brain surgery to reduce swelling.

36. Mr. Williams was attempting to recover when a blood clot that was caused by the accident traveled through his veins and stopped his heart.

37. On April 22, 2021, Mr. Williams died from his injuries.

38. The medical examiner reported that Mr. Williams death was a direct result of the crash.

39. Defendant Mitchell was charged with various crimes associated with this incident and the crash which killed Mr. Williams. The criminal charges were dropped because the initial investigation failed to identify a witness that saw Mr. Mitchell behind the wheel at the time of the crash.

40. Subsequent investigation identified a witness who lived at the intersection of the crash. The witness observed Defendant Mitchell driving and attempting to flee the scene on foot after the crash.

## PRIOR INCIDENTS OF DELIBERATE INDIFFERENCE BY CHARLOTTE-MECKLENBURG POLICE DEPARTMENT

41. CMPD Pursuit policy requires officers to consider a variety of factors, including location, traffic conditions, speed limit and weather before and during pursuits.

42. The number of CMPD pursuits had more than quadrupled over the last few years during the time of this accident, from 22 in 2011 to 97 in 2021.

43. CMPD updated its Police Pursuit Policy in April of 2022.

44. Anthony Williams is among over 4,000 innocent victims killed over the last four decades in connection to police pursuits, according to National Highway Traffic Safety Administration records (NHTSA).

45. According to CMPD Pursuit Data Release, pursuits were at their highest in Charlotte during 2021. That covers a ten-year window of police pursuits.

46. Also according to CMPD Pursuit Data Release, Charlotte's population has increased exponentially leading to a sharp rise in calls for service and incidents of violent crime. In addition, divisions are reporting drivers who have become more brazen and reckless, trying to elude capture and flee traffic stops.

47. Federal pursuit data shows the number of bystander deaths specifically has more than tripled since 1982, outpacing other pursuit deaths. Records show at least 58 "occupants of other vehicles" and "nonoccupants" died in 1982 compared to a minimum of 214 in 2020. According to the data, several of those innocent victims lived and died in the Charlotte area and across the Carolinas.

## FIRST CAUSE OF ACTION
[Deliberate Indifference in violation of the Fourteenth Amendment - Defendant City, Defendant County, Officers in their official capacity]

48. The preceding paragraphs are incorporated by reference as if fully set forth herein.

49. Deliberate indifference is a legal standard that requires government officials to take reasonable steps to protect individuals in their custody from harm.

50. In the context of police pursuits, deliberate indifference refers to situations where law enforcement officers continue to chase a suspect even though the pursuit creates a high risk of harm to innocent bystanders.

51. Deliberate indifference is "an intermediate level of culpability" that can, if proven, also establish a due process violation.

52. Deliberate indifference rests upon the luxury of having time to make unhurried judgments, upon the chance for repeated reflection, largely uncomplicated by the pulls of competing obligations. When such extended opportunities to do better are teamed with protracted failure even to care, indifference is the result.

53. Thus, when an officer is able to make unhurried judgments with time to deliberate, such as in the case of a non-emergency, deliberate indifference is the applicable culpability standard for substantive due process claims involving driving decisions.

54. Based upon information and belief, CMPD conducted a planned operation in order to apprehend Defendant Mitchell.

55. Pursuant to CMPD Directives planned operations of this nature require supervisory approval.

56. Despite the fact that CMPD had time to make an unhurried judgment as to when and where to attempt the arrest of Defendant Mitchell, who was known to flee from law enforcement, CMPD elected to pursue Defendant Mitchell at 6:00pm, at night, during rush hour traffic.

57. The City of Charlotte is the fifteenth largest City in the country and is known for significant traffic issues.

58. Report from the National Transportation Research Nonprofit (TRIP) examines the condition, use, safety and efficiency of North Carolina's surface transportation system.

59. TRIP found that Charlotte commuters have more lost hours due to congestion than their counterparts. Charlotte drivers lose an estimated 47 hours (about 2 days) per year to congestion.

60. Accordingly it has resulted in hazardous and dangerous road conditions, especially during rush hour traffic.

61. Despite being aware of this information, CMPD decided after deliberation to proceed with the operation to apprehend Defendant Mitchell.

62. Mitchell observed the presence of law enforcement and fled the scene.

63. Based upon information and belief, CMPD failed to disengage from the pursuit in accordance with their policy.

64. CMPD Directive 600-022 requires officers to disengage when a pursuit is not authorized.

65. An officer has disengaged when the officer has reduced their speed to the speed limit, deactivated lights and sirens, and informed dispatch that they are not pursuing a fleeing suspect.

66. Based upon information and belief, CMPD officers continued to follow the Defendant at a rate of speed above the posted speed limit.

67. Furthermore the aggressive pursuit of Defendant Mitchell by way of helicopter also persuaded him to continue his flight at a high rate of speed.

68. Ultimately, Defendant Mitchell crashed into Mr. Williams.

69. Mr. William's death was the result of the Defendants deliberate indifference towards the safety of Mr. Williams not exclusively because of the alleged policy violation, but due to the fact that the entire planned operation was done in a manner that was unreasonably risky in light of what was known about Defendant Williams and the traffic conditions at the time.

## SECOND CAUSE OF ACTION
[Deliberate Indifference Pursuant to 42 U.S.C. § 1983) - Defendant City, Defendant County, Officers in their official capacity]

70. The preceding paragraphs are incorporated by reference as if fully set forth herein.

71. The unconstitutional actions and/or omissions of Defendants as well as other officers employed by or acting on behalf of these Defendants, on information and belief, were pursuant to the following customs, policies, practices, and/or

procedures of the CMPD, which were directed, encouraged, allowed, and/or ratified by policy making officers and supervisors for Defendants City and County:

72. Defendant supervisors were aware and allowed an inherently dangerous police pursuits during the apprehension of defendants to proceed.

73. Despite the fact that supervisors were aware of Defendant Mitchell's propensity to flee, the supervisors allowed the officers to conduct the operation at an unreasonable time of day.

74. As a result of the supervisors allowing this operation to proceed, Mr. Williams was killed.

75. The aforementioned customs, policies, practices, and procedures, the failures to properly and adequately hire, train, instruct, monitor, supervise, evaluate, investigate, and discipline, as well as the unconstitutional orders, approvals, ratification and toleration of wrongful conduct by Defendants City, County and Mitchell, were a moving force and/or a proximate cause of the deprivations of Anthony Williams' clearly-established and well-settled constitutional rights in violation of 42 U.S.C. §1983, as more fully set forth above.

76. As a direct and proximate result of the unconstitutional actions, omissions, customs, policies, practices and procedures of Defendants, Plaintiff is entitled to damages, penalties, costs and attorney fees as set forth, above, including punitive damages against Defendants.

## THIRD CAUSE OF ACTION
[Wrongful Death Pursuant to N.C. Gen. Stat. § 28A-18-2 (All Defendants)]

77. The preceding paragraphs are incorporated by reference as if fully set forth herein.

78. But for CMPD conducting an unreasonably risky operation that resulted in a high-speed chase, Mr. Williams would still be alive.

79. Defendant Xavier Mitchell was observed by a witness who lived at the intersection of the accident driving and crashing into Mr. Williams' vehicle.

80. Despite the fact that Mr. Williams was visibly injured, Mitchell attempted to flee from the scene of the crime.

81. Mitchell was quickly apprehended by law enforcement who were actively pursuing him.

82. Mr. Williams death was caused by the negligence of all defendants.

# PRAYER FOR RELIEF

**WHEREFORE**, the Plaintiff, Anthony Williams Jr, as Administratrix of the Estate of Anthony Williams (Deceased), respectfully prays the Court for the following relief:

A.  That Plaintiff have and recover of Defendants, jointly and severally, for the personal injuries and wrongful death of Anthony Williams

B.  That all issues of fact be tried by a jury;

C.  That Plaintiff recover from Defendants, jointly and severally, the costs of this action and reasonable attorney's fees to the fullest extent allowed by North Carolina and United States law; and

D.  That Plaintiff be granted all other relief, both legal and equitable, which the Court deems just and proper.

This the 8th day of January, 2024

/s/Walter L. Bowers, Jr.
Walter L. Bowers, Jr., NC Bar No. 47590
WOODEN BOWERS, PLLC
10130 Mallard Creek Road, Suite 300
Charlotte, North Carolina 28262
Telephone: 704-665-5838
Facsimile: 704-973-9380
Email: wbowers@wbvlaw.com
*Attorney for the Plaintiff*
